794 P.2d 959

**MORGAN BANK (DELAWARE) a Delaware corporation, Plaintiff/Appellant,**

v.

**James C. WILSON and Grace R. Wilson, Defendants/Appellees.**

**No. 2 CA–CV 90–0034.**

Court of Appeals of Arizona, Division 2, Department A.

May 3, 1990.

Reconsideration Denied June 13, 1990.

Morris, Nichols, Arsht & Tunnell by Walter L. Pepperman, II, Wilmington, Del., Brown & Bain, P.A. by Richard Calvin Cooledge, Joseph W. Mott, and Antonio T. Viera, Phoenix, for plaintiff/appellant.

Jennings, Strouss & Salmon by Kenneth C. Sundlof, Jr., Phoenix, for defendants/appellees.

## OPINION

HATHAWAY, Judge.

This appeal arises out of the execution of an installment purchase and security agreement and promissory note between the seller, Lasma Arabians, Ltd., an Arizona corporation, (Lasma) and the appellee buyers, James C. and Grace R. Wilson, Colorado residents (Wilson), which was subsequently assigned by Lasma to the appellant, Morgan Bank, a Delaware corporation (Morgan Bank). When Wilson defaulted on the note, Morgan Bank brought suit in Arizona and the trial court granted Wilson's motion to dismiss for lack of personal jurisdiction with prejudice. Morgan Bank appeals the dismissal and we reverse.

## FACTS

Lasma is a Florida limited partnership which owns and operates an Arabian horse farm in Oldham County, Kentucky, and whose general partner is an Arizona corporation. On October 24, 1985, Lasma and Wilson negotiated and executed an agreement and promissory note for the purchase of two Arabian horses in Kentucky.

The Installment Purchase and Security Agreement at paragraph 4 noted that the unpaid balance of the cash price was evi-

denced by the promissory note executed on that same date. The promissory note contains the following language: "This is the Note referred to in the Installment Purchase and Security Agreement between the same parties of even date herewith, and is secured according to the Security Agreement contained therein." The purchase price was $1,125,000. Wilson paid $225,000 upon execution. The balance of $900,000 plus interest was due in installments as evidenced by the promissory note executed contemporaneously with the purchase and security agreement. The note provided that payment was to be made to Lasma Arabians, Ltd., in Scottsdale, Arizona. Lasma subsequently assigned its interest in the purchase agreement and note to Morgan Bank. Wilson was notified of the assignment in a June 3, 1986, letter received from Morgan Bank. The letter stated:

> Please forward all future payments directly to the following:
>     Morgan Bank (Delaware)
>     c/o Lasma Arabians, Ltd.,
>     Collection Agent
>     3116 E. Shea, Suite ' 215
>     Phoenix, Arizona 85028

The installment purchase agreement included the following provision:

> 16. APPLICABLE LAW, JURISDICTION, VENUE AND ATTORNEYS' FEES:
> This contract shall be construed and governed by the laws of the state indicated above the signature lines. At the option of Seller, jurisdiction and venue for any dispute arising under or in relation to this contract shall be only in the Seller's state and county, as set forth in paragraph 1 above. In the event lawsuit is brought with respect to this contract (or seller repossesses), the prevailing party shall be entitled to reasonable attorneys' fees.

Typed into the blanks above the signature lines designating city, county and state, was: LaGrange, Oldham, Kentucky. These were also the lines which designated the place where the agreement was executed. Paragraph 1 contained the seller's state and county: Arizona, Maricopa County.

## PROCEDURE

Following the June 3, 1986, notification of assignment, Wilson sent payments to Morgan Bank's collection agent Lasma in Arizona. On May 4, 1987, Wilson filed suit in Kentucky against Lasma alleging violations of the express warranties in the agreement regarding the health, soundness and fertility of one of the horses purchased, and demanding complete or partial rescission. Wilson defaulted on the note in July 1987. Standing in the shoes of the seller/assignor, Morgan Bank filed suit against Wilson in Arizona on April 8, 1988. Wilson filed a second suit in Kentucky for a declaratory judgment regarding its obligations under the assigned agreement and note on May 13, 1988. There is no further evidence in the record regarding the Kentucky actions except that they are pending. On May 16, 1988, Wilson filed a motion to dismiss Morgan Bank's claim in Arizona for lack of personal jurisdiction. Morgan Bank responded that, pursuant to the forum selection clause, jurisdiction was proper in Arizona. Without explanation, the trial court granted the motion. Morgan Bank raises the following issues: (1) the trial court erred in granting the motion to dismiss because personal jurisdiction was proper under the forum selection clause; and (2) even if the dismissal was appropriate, the trial court erred by dismissing the claims with prejudice.

## STANDARD OF REVIEW

The trial court granted Wilson's motion to dismiss for lack of personal jurisdiction; there were no factual findings. The relevant facts appear to be undisputed. A "determination that personal jurisdiction can be properly exercised is a question of law, reviewable *de novo* when the underlying facts are undisputed." *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.

1986).[1]  See also, *Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 412 P.2d 47 (1966); *City of Scottsdale v. Thomas,* 156 Ariz. 551, 753 P.2d 1207 (App.1988).

## PERSONAL JURISDICTION

■ There are three types of activities by a defendant which may allow a court to assert personal jurisdiction over that defendant: (1) consent; (2) presence in the forum; (3) causing effects in the forum. *Ruggieri v. General Well Serv., Inc.,* 535 F.Supp. 525 (D.Colo.1982).

■ Personal jurisdiction is a right which may be waived. A litigant may enter into a variety of legal arrangements in which express or implied consent to the personal jurisdiction of the court is given. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492, 502 (1982). In view of present-day commercial realities, most courts recognize that parties may include contractual provisions for resolving controversies in a particular jurisdiction. *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); *Pelleport Investors v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 280 (9th Cir.1984); *Chase Third Century Leasing Co. v. Williams,* 782 S.W.2d 408 (Mo.App.1989).

■ The United States Supreme Court has held that enforcement of such forum selection provisions does not offend due process where they have been fully negotiated and are not unreasonable and unjust. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, n. 14, 105 S.Ct. 2174, 2182, n. 14, 85 L.Ed.2d 528, 540 n. 14 (1985). That specific test, adopted in *M/S Bremen v. Zappata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), has been embraced by some state courts, *Societe Jean Nicolas Et Fils v. Mousseux,* 123 Ariz. 59, 597 P.2d 541 (1979), *Int'l Collec-*

*tion Serv., Inc. v. Gibbs,* 147 Vt. 105, 510 A.2d 1325 (1986); and it has been modified by some, *Prudential Resources Corp. v. Plunkett,* 583 S.W.2d 97 (Ky.App.1979). Where a forum selection clause is held enforceable, the necessity for a due process analysis of the type and extent of the defendant's contacts with the forum, *Burger King Corp. v. Rudzewicz, supra; Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 736 P.2d 2 (1987); *Taylor v. Fireman's Fund Ins. Co. of Canada,* 161 Ariz. 432, 778 P.2d 1328 (App.1989), is obviated. *National Equip. Rental, Ltd. v. Polyphasic Health Sys's, Inc.,* 141 Ill.App.3d 343, 95 Ill.Dec. 569, 490 N.E.2d 42 (1986) (upholding consent to jurisdiction clause does not violate due process even though no minimum contacts existed between defendants and State of New York); *Int'l Collection Serv., Inc. v. Gibbs, supra,* (due process analysis of minimum contacts unnecessary as long as forum selection clause is enforceable). Thus, assuming that the forum selection clause is enforceable, Wilson consented to jurisdiction in Arizona.

## ENFORCEABILITY OF FORUM SELECTION CLAUSE

■ Morgan Bank argues that Arizona law should be applied in determining the enforceability of the forum selection clause of this agreement. Our supreme court has held that:

> [A] forum selection clause that is fairly bargained for and not the result of fraud will be enforced so long as to do so is reasonable at the time of litigation and does not deprive a litigant of his day in court. The burden of so showing falls upon the party challenging the validity of the clause.

*Societe Jean Nicolas Et Fils v. Mousseux,* 123 Ariz. at 61, 597 P.2d at 543.

Wilson contends that Kentucky law should govern because of the choice of law

---

1. Wilson contends that when reviewing enforceability of forum selection clauses, the proper standard of review is abuse of discretion, citing *Pelleport Investors v. Budco Quality Theatres, Inc.,* supra. Although the forum selection provision of the agreement in this case was before the trial court, the basis for the court's ruling was lack of personal jurisdiction as evidenced by the minute entry, not enforceability of the forum selection clause. However, under either standard of review, we would reach the same result.

**538**

provision set forth in the agreement. *Prudential Resources Corp. v. Plunkett,* supra, discusses the enforceability of forum selection clauses under Kentucky law. The *Prudential* court held that if suit in the selected forum would be unfair or unreasonable, it would not be enforced. In analyzing what would be reasonable and fair, the court looked at whether the clause was freely negotiated, whether the selected forum was a seriously inconvenient place for trial, and whether Kentucky had more than a minimal interest in the lawsuit.

The distinction between application of Arizona and Kentucky law is that Kentucky law looks to convenience and the state's interest in the lawsuit, and Arizona does not weigh such factors. However, we believe that under either Arizona or Kentucky law, the result is the same in the present case, and therefore do not decide which law applies.

Under either Arizona or Kentucky law, one factor to be analyzed is whether the agreement was freely negotiated. Wilson argues that the forum selection clause was the result of overreaching by Lasma. There is no indication that this argument was presented to the trial court. We will not consider issues not raised below for the first time on appeal. *Sahf v. Lake Havasu City Ass'n for the Retarded and Handicapped,* 150 Ariz. 50, 721 P.2d 1177 (App. 1986).

The reasonableness factor under Arizona law requires analysis of whether enforcing the forum selection clause would deprive Wilson of his day in court. Under Kentucky law, the critical factor is whether requiring Wilson to litigate in the selected forum would be seriously inconvenient. Wilson contends that the court must determine the result of inconvenience with respect to what inconvenience was in the minds of the parties when entering the contract. Restatement (Second) of Conflict of Laws, § 80, comment *c* (1971). Wilson further argues the transfer from Lasma, the seller, to Morgan Bank, created an ambiguity in the contract. The agreement provides that jurisdiction and venue "shall be only in the Seller's state and county as set forth in paragraph 1." Paragraph 1 references Maricopa County, Arizona. Wilson argues that once Lasma's interest was transferred to Morgan Bank, it became the seller, and arguably it became unclear whether Arizona or Delaware was the chosen forum. Morgan Bank responds as assignee of Lasma that the assignee steps into the shoes of the assignor acquiring the benefits as well as the burden of the contract assigned. *Wylie v. Douglas Lumber Co.,* 39 Ariz. 511, 8 P.2d 256 (1932); *Whayne Supply Co. v. Morgan Const. Co.,* 440 S.W.2d 779 (Ky.1969). In this instance, the burden upon the assignee was that pursuant to the assigned contract, Morgan Bank had to sue or be prepared to defend suit in Arizona. Wilson agreed to be sued in Arizona at the seller's option and was sued in Arizona by Morgan Bank standing in Lasma's shoes. Wilson's argument is meritless.

Next Wilson argues that to expect them to defend this action in Arizona with Arizona counsel while having to turn to Kentucky law for their defenses, is both unfair and seriously inconvenient. Wilson's answering brief asserts that the "best way to assure that the governing Kentucky law will be applied, and applied correctly, is to have the action brought in the state where this law is in force." Wilson cites no authority in support of this argument, and we reject it. Ariz.R.Civ.App.P. 13(a)(6), 17B A.R.S.

Finally, Wilson contends that Arizona has no appreciable relationship to this transaction nor interest to protect which would support enforcement of the forum selection clause. In support of this, Wilson cites the fact that the agreement and note were executed in Kentucky, Kentucky law governs any dispute, and there are two actions pending in Kentucky courts. The record reveals no basis for the conclusion that the pending Kentucky actions are there because of the convenience of developing proof in that forum. There is no information in the record except copies of the two complaints filed. Wilson states that the significant relationship argument inferentially requires an analysis of jurisdictional contacts with Arizona and that

lack of such contacts renders the forum selection clause unenforceable. *Horning v. Sycom,* 556 F.Supp. 819 (E.D.Ky.1983) (Wisconsin forum selection clause unenforceable because of the significant contacts between Kentucky forum where suit was brought and the parties.) We believe *Horning* is distinguishable. In *Horning,* the court ruled that Kentucky had a substantial interest because its public policy was that its "consumers [should] have a local forum to redress grievances against non-resident sellers of products." 556 F.Supp. at 821. The plaintiff in *Horning* was a solo dental practitioner who was a Kentucky domiciliary operating his business in the State of Kentucky. He had purchased equipment for use in his Kentucky business from a foreign vendor. In the present case, Colorado residents purchased Arabian horses in Kentucky and removed them from that state. They agreed to pay and did pay installments to an Arizona corporate general partner and subsequently to its assignee in Arizona. There are no other Kentucky contacts. We cannot agree that Kentucky has a more significant relationship than Arizona to this transaction.

Wilson argues that because the parties chose by their agreement to apply Kentucky law to all disputes and because suits have been filed in Kentucky, the forum selection clause should be rendered unenforceable. Morgan Bank responds that to do so would render the forum selection clause meaningless. We agree. "It is a well established principle of contract construction that clauses which ... are knowingly incorporated into a contract should not be treated as meaningless." *Sterling Forest Assoc's, Ltd. v. Barnett–Range Corp.,* 840 F.2d 249, 251 (4th Cir.1988). And see, *Bense v. Interstate Battery Sys. of America, Inc.,* 683 F.2d 718 (2nd Cir. 1982).

We find that these were sophisticated parties executing a business transaction for in excess of a million dollars, parties who could and did consent to jurisdiction and venue in Arizona pursuant to an enforceable forum selection clause. Accordingly, we reverse. Based upon our disposition of this issue, we find it unnecessary to address Morgan Bank's second issue.

Morgan Bank is awarded costs and attorneys' fees on appeal upon compliance with Ariz.R.Civ.App.P. 21(c), 17B A.R.S.

Reversed.

ROLL, P.J., and HOWARD, J., concur.